JOHANNA KEARNEY FOULKES, Administratrix, *v.* ROBERT HOWES.

Defendant, the highest bidder at an auction sale of property belonging to the succession, refused to comply with the terms of adjudication. The property was regularly resold, and there was a loss. This suit was brought for the difference of price between the first and second sale. *By the Court:* The petition states that the property was adjudicated to *Robert Howes* at the first auction sale for the sum of five thousand dollars, *all of which will more fully appear by reference to the proces verbal of sale, hereto annexed for greater certainty*. But the *proces verbal* states that the property was adjudicated to *Robert Howes for the minor children of John Foulkes*, and this is confirmed by the evidence of the auctioneer, who produced on the trial the card handed to him at the time of adjudication with the name of the purchaser written on it, as follows : " *Tutor Robert Howes*, for the minor children of *John Foulkes*." This is a variation between the *allegata* and *probata*, which in so rigorous a proceeding as that upon a *folle enchère*, is fatal to the action.

In order to extend the operation of Article 2593 of the Code, to the granting of damages against the party who has made the bid in the name of another, there should be bad faith on the part of the bidder, or at least a want of that care which a good father of family would have used.

The Supreme Court having decided both ways as to the rights of the defendant to make a bid for the minors without the previous consent of a family meeting, it seems unreasonable to hold the defendant liable for error of law as to his right so to bid.

It having been irrevocably determined that the *folle enchère* was valid, it follows, as an irresistible sequence of that judgment, that defendant is liable under Articles 2589 and 2593 of the Code. SPOFFORD, J., dissenting, with whom concurred LEA, J.

There is no fatal discrepancy between the *allegata* and *probata*. The *proces verbal* itself was annexed to the petition, and specially referred to in it for greater certainty. The liability of defendant is personal under Article 3893, for the very reason that he caused the adjudication to be made to him as tutor without sufficient authority to bind the minors. By legal intendment the adjudication was made to him personally. SPOFFORD, J., dissenting, with whom concurred LEA, J.

Neither error of law, nor the absence of bad faith can release the defendant and oblige the succession to lose the money. This is not an action in damages for a tort, where malice must be proved although even then, ignorance of the law, however obscure and uncertain it may be, has not been held to constitute an excuse. The substance of this action is to recover the damages, liquidated by the law itself, for the breach of a contract. SPOFFORD, J., dissenting, with whom concurred LEA, J.

APPEAL from the Second District Court of New Orleans, *Morgan*, J.
*Benjamin, Bradford & Finney*, for plaintiff.   *Durant & Hornor*, for defendant and appellant.

BUCHANAN, J. (SPOFFORD, J. and LEA, J., dissenting.)  The petition states that the property was adjudicated to *Robert Howes* at the first auction sale for the sum of five thousand dollars, *all of which will more fully appear by reference to the proces verbal of sale, hereto annexed for greater certainty.*  But the proces verbal states that the property was adjudicated to *Robert Howes, for the minor children of John Foulkes.*  And this is confirmed by the evidence of the auctioneer, who produced on the trial the card handed to him at the time of adjudication, with the name of the purchaser written on it, as follows:

" Tutor, *Robert Howes*, for the minor children of *John Foulkes.*"

This is a variation between the *allegata* and the *probata* which, in so rigorous a proceeding as that upon a *folle enchère* is fatal to the action.  See the observations of the court in *Guillote* v. *Jennings*, 4th Annual, 242.

But it is said that *Howes* was without legal authority to purchase for his wards, and that the adjudication is to be considered as made to himself personally, under Article 2593 of the Code.  We think that, in order to extend the operation of this Article to the granting of damages against the party who has made the bid, in the name of another, which is the object of the present action, there should be bad faith on the part of the bidder, or at least a want of that care which a good father of family would have used.  But the judgment of this court pronounced in the May term of last year between the same parties, is a sufficient voucher for the good faith of *Howes* in making the bid in question.  We refer to that decision for the facts of the case.  The sole ground upon which the defendant is charged with personal liability, is in the words of Article 2593, that he was " without sufficient authority to bind the minors, in whose name he bid at the auction sale.  And the want of authority is inferred from the decision of this court upon the re-hearing of the former case just mentioned, pronounced last January; which held that the tutor should have been authorized to make the purchase by a family meeting *previously to the sale.*  But upon this point of law, this court was divided, two out of the five judges holding the contrary doctrine, namely, that the consent of the family meeting might be obtained *after the purchase.*  And this had been the doctrine of the majority of the court last year, when the case was first decided. Under these circumstances it seems unreasonable to mulct the defendant in damages for having erred upon a matter of law upon which this court, the expounders of the law in the last resort, has decided both ways.  In other words, we are asked to punish the defendant for that which this court, as constituted last May, declared to be a legal act; and which is only now held illegal, because of the resignation of the two judges and the election of two others in the interval between the petition for a re-hearing of the first judgment, and the decision of that application for re-hearing.

The circumstances of this case exclude the demand of the plaintiff.

FOULKES
v.
HOWES.

The judgment of the District Court is, therefore reversed; and it is ordered and adjudged that there be judgment for defendant with costs in both courts.

MERRICK, C. J. (with whom concurred VOORHIES, J.) Under the peculiar facts of this case, I am inclined to concur in the conclusions of Mr. Justice BUCH-ANAN.

The tutor of the first sale took upon himself in his bid, no name or capacity which he did not possess.

We are informed by the counsel for the plaintiff that this suit is prosecuted for the benefit of the minors for whom *Howes* is tutor.

I am unwilling to see a tutor who has been acting in good faith and for what was fairly supposed to be for the interests of his wards, mulcted in eighteen hundred dollars damages for a mere error of judgment. Had the administratrix sued for or even favored a specific performance of the contract, with permission to use the superior mortgage of the minors in its payment (which would have been injurious to no one) instead of insisting upon her strict rights in the other form it is probable that the tutor would have been enabled to comply with his bid.

If there has been any loss, it has been occasioned, perhaps, as much by the obstinacy of the administratrix as the error of judgment of the tutor.

Not finding the tutor within the strict letter of Article No. 2593 of the Civil Code, I am willing, in a proceeding, avowedly for the benefit of his wards, for whom he has acted with his best ability, to leave him where I find him, without imposing upon him a penalty for his zeal and exertions in their behalf.

SPOFFORD, J. (dissenting, with whom concurred LEA, J.) It has been irrevocably determined that the sale to *Dr. Puissan a la folle enchère*, under Article 2589 of the Civil Code, at the risk of the defendant *Howes*, was a rightful procedure and vested a title in *Dr. Puissan*. See the case of the *Succession of George Foulkes*, ante p.

It matters not how much the court may have wavered and differed in coming to that conclusion, nor indeed would it matter so far as the determination of this cause is concerned, if the conclusions were erroneous; for *res judicata pro veritute accipitur*.

It was decided that *Howes* made a bid in the name of the minors under his tutelage without sufficient authority to bind them.

He refused to pay the price, was duly put in default, neglected to take any steps to procure relief by attempting to comply with the requisites of law, and the result has been a resale of the property at a sacrifice of $1815, "If at the second crying, the thing is adjudicated for a smaller price than that which had been offered by the person to whom the first adjudication was made, the latter remains a debtor to the vendor for the deficiency and for all the expenses incurred subsequent to the first sale. But if a higher price is offered for the thing than that for which it was first adjudged, the first purchaser has no claim for the excess." C. C. 2589.

"The person who bids in the name of another without sufficient authority to bind him, is considered to have bought on his own account, and is answerable for all the consequences of the adjudication." C. C. 2593.

Under these Articles the liability of the defendant appears to me to be an inevitable sequence of our former judgment.

I am unable to perceive any fatal discrepancy between the *allegata* and *probata*, nor does it seem to have been noticed by counsel. The *proces verba*

itself was annexed to the petition and specially referred to in it for greater certainty. The liability of *Howes*, is personal under Article 2593, for the very reason that he caused the adjudication to be made to him, as tutor without sufficient authority to bind the minors. By legal intendment the adjudication was made to him personally.

Nor do I perceive how an error of law, or a lack of bad faith on his part can release the defendant and oblige the succession of *Foulkes* to lose this money. This is not an action in damages for a tort, where malice must be proved, although even then ignorance of the law, however obscure and uncertain it may be, has not been held to constitute an excuse. The substance of this action is to recover the damages, liquidated by the law itself, for the breach of a contract. By the act of *Howes* the succession of *Foulkes*, and by consequence its creditors have lost $1,815; now should not this loss fall upon the man whose mistaken notions of law occasioned it, though he may have acted in the best of faith, rather than upon the innocent creditors of the injured succession, since we have already determined that the administratrix acted throughout in strict conformity to law?

If we are at liberty to look into these equities in a proceeding of strict law, it should also be observed that *Howes* himself is proven to have caused the sacrifice, by insisting upon his own title at the re-sale, and menacing the bidders with a law-suit.

It has been said, that if we affirm the judgment, it may greatly injure the defendants, and possibly deprive the minors under his protection of a home. If so, it is an extremely hard case; but rules of law are inflexible or they are worthless.

The rule that operates a hardship to-day, may work beneficially in all time to come. We cannot make an exception where the law does not, without invading the legislative province. And it has ever been found that that system of law is best, which leaves the least to the discretion of the Judge.

The claim being *ex contractu* and not *ex delicto*, the prescription of one year is inapplicable. For these reasons, I think the judgment of the district court should be affirmed.

An application having been made for a rehearing, the following judgment was rendered:

MERRICK, C. J. We find in the application for a rehearing in this case, the following passage:

" Time is wanting to express our views fully. We respectfully refer the majority of the court to the opinion of Judge SPOFFORD, in connection with what we hastily suggest. We will not say that that opinion is unanswerable; although in our humble opinion no answer suggests itself. But we submit, that that opinion should be refuted, or should control the decision of this case, in the interest of the jurisprudence of our State.

If there be an answer, let it be given, and the decision of your honors be vindicated."

The high standing of the gentlemen who have applied for the rehearing in this case, requires from us some notice of the petition for a rehearing so extraordinary in its tone. We have hitherto supposed that we had discharged our duty, when we had respectfully considered each others opinions and decided each individual case, upon the reasons applicable to it. We were not aware that we owed to counsel or the public, the duty of combatting the

opinion of the Judge who might be unable to concur with the majority in opinion, neither had we surmised the way, or learned precisely, how we were to be informed, and on what occasions it would be necessary and proper to vindicate any particular decision of this court.

We thought that in the case before us, all that was required of either the minority or majority of the court was, that the case should be so decided that injustice should not be done under the law to the one party or the other.

The majority of the court did not believe, that in a proceeding *stricti juris*, they were bound to enlarge the letter of the law, in order to embrace and mulct a tutor in damages for the benefit of his wards, whom he was endeavoring to serve to the best of his abilities; nor did they think that the question in this controversy had already been adjudged against the defendant in the former suit.

The minority of the court have entertained, and with marked ability expressed, different views, which are entitled to the same respect, although not decisive of the matters in controversy, as the opinion of the majority of this court, and no more. Neither the opinion of the majority nor minority was written to catch the approbation of this or that man, (motives unworthy of any judicial tribunal, whose sole object should be to do justice in each case, according to the laws of the land.) Nor can it be permitted to any one, how respectable soever his standing may be, so far to forget in his official intercourse with this tribunal, what is due to it, as to point out, under the pretence of its interest to jurisprudence, what particular opinions are worthy of favor, and what need to be vindicated by the court.

A majority of the court are of the opinion, that justice has been done between these parties to this suit.

Rehearing refused; and inasmuch as the application for a rehearing is considered disrespectful to the court, it is ordered that the same be taken from the files by the Clerk, and returned to the counsel who filed it.